UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IRA C. JACKSON,

      Plaintiff,

v.                                    Case No. 3:12-cv-280-J-39MCR

LYNN HILL, et al.,

      Defendants.

_____

**ORDER**

**I. Status**

    Plaintiff Ira C. Jackson, an inmate of the Florida penal system, is proceeding in this action on a pro se Second Amended Complaint (Second Amended Complaint) (Doc. 33) filed pursuant to 42 U.S.C. § 1983.[1]  The Court will construe the pro se Second Amended Complaint liberally.[2]  Plaintiff alleges that the Defendants violation of his civil rights occurred at Putnam Correctional Institution (PCI).

_____

    [1] Plaintiff filed his original complaint (Doc. 1) on September 16, 2010, pursuant to the mailbox rule, and he filed an amended complaint on April 26, 2011.  He is proceeding on his verified Second Amended Complaint (Doc. 33).  See Stallworth v. Tyson, 578 F. App'x 948, 950 (11th Cir. 2014) (per curiam) (citations omitted) ("The factual assertions that [Plaintiff] made in his amended complaint should have been given the same weight as an affidavit, because [Plaintiff] verified his complaint with an unsworn written declaration, made under penalty of perjury, and his complaint meets Rule 56's requirements for affidavits and sworn declarations.").

    [2] With regard to the documents filed with the Court, the Court will reference the page numbers assigned by the electronic docketing system.

The remaining Defendants are Lynn Hill, Assistant Warden; L. Crews, Warden's Secretary and Grievance Coordinator; Sgt. Hale; and Lieutenant Pendleton.  The remaining claim is Plaintiff's claim about being disciplined in retaliation for filing grievances.  See Opinion, Eleventh Circuit, June 16, 2014 (Opinion) (Doc. 43 at 3-5).  More specifically, "Jackson alleged that officials disciplined him for filing grievances by 'search[ing] [his] person and locker,' placing him in solitary confinement, and subjecting him to unnecessary psychological testing." Id. at 4-5.  The question remains whether Plaintiff can recover nominal damages for the claim that he was disciplined in retaliation for filing grievances.[3] Id. at 5.

Defendants' Motion for Summary Judgment (Defendants' Motion) (Doc. 88) is before the Court.  Plaintiff was advised of the provisions of Federal Rule of Civil Procedure 56, notified that the granting of a motion to dismiss or a motion for summary judgment would represent a final adjudication of this case which may foreclose subsequent litigation on the matter, and given an opportunity to respond.  See Summary Judgment Notice (Doc. 89) & Order (Doc. 46).  Plaintiff responded.  See Plaintiff's Response to Defendants' Motion for Summary Judgment (Response) (Doc. 99).

---

[3] The Court previously dismissed the claim for damages for emotional and physical stress allegedly caused by the officials' retaliation and the claim about the destruction of Plaintiff's property.  The Eleventh Circuit affirmed those parts of the dismissal.  Opinion at 1-3.

## II.  Second Amended Complaint

In his verified Second Amended Complaint, Plaintiff alleges that the Defendants disciplined him for filing grievances.  He initiated the grievances process at Glades Correctional Institution (GCI), and he continued to grieve after he was transferred to PCI. Plaintiff states that on December 18, 2009, Sgt. Hale retaliated against Plaintiff for utilizing the grievance process by sending Officers T. Pinkston, B. R. Davis, and Officer Hopkins to Plaintiff's cell.  Second Amended Complaint at 11.  The officers harassed, intimidated and searched Plaintiff and searched his locker.  Id.  Plaintiff submitted a grievance of reprisal against Sgt. Hale for retaliation, claiming she sent her subordinates to harass Plaintiff.  Id.; Exhibit E.  Plaintiff submitted a document entitled Formal Complaint to the Regional Director of Region 3 against Sgt. Hale claiming she retaliated against Plaintiff through her subordinates.  Second Amended Complaint at 11; Exhibit F. Plaintiff also filed an informal grievance against Defendant Hale on January 2, 2010, which was denied.  Second Amended Complaint at 12-13; Exhibit H.

With regard to Defendants Hill and Pendleton, Plaintiff states that on December 30, 2009, they threatened Plaintiff with solitary confinement if he continued to file grievances.  Second Amended Complaint at 12.  Defendant Hill showed Plaintiff several of his

previously submitted grievances, and Defendant Pendleton said that Plaintiff had now involved other officers.  <u>Id</u>.

Plaintiff states that on February 5, 2010, he was placed in administrative confinement without just cause.  <u>Id</u>. at 14.  He started a hunger strike to protest his treatment.  <u>Id</u>.  On February 10, 2010, Plaintiff was told that he was being transferred from PCI to an "S.O.S. psych cell" at Tomoka Correctional Institution (TCI) for a psychological evaluation because he was on a hunger strike. <u>Id</u>. at 15.  On February 16, 2010, Plaintiff ceased his hunger strike.  <u>Id</u>.  He was placed in administrative confinement at TCI pending further investigation.  <u>Id</u>. at 16; Exhibit J.  On February 25, 2010, Plaintiff was transferred to Central Florida Reception Center (CFRC) and placed in open population.  Second Amended Complaint at 16.  Finally, as a result of a mental health evaluation, Plaintiff was transferred to Hardee Correctional Institution (HCI) on March 2, 2010.  <u>Id</u>.

Under the Relief Requested, Plaintiff claims he was subjected to undue emotional and physical stress by the Defendants.  <u>Id</u>. at 20.  As a result, he states that he went on a hunger strike and suffered from sleepless nights and anxiety.  <u>Id</u>.  He further claims that he was restrained and confined in solitary confinement as a result of the Defendants "exposing" him "to an undue psychological screening and evaluation[.]" <u>Id</u>. at 20-21.

### III. Summary Judgment Standard

The Eleventh Circuit set forth the summary judgment standard.

> Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law controls which facts are material and which are irrelevant. <u>Raney v. Vinson Guard Service, Inc.</u>, 120 F.3d 1192, 1196 (11th Cir. 1997). Typically, the nonmoving party may not rest upon only the allegations of his pleadings, but must set forth specific facts showing there is a genuine issue for trial. <u>Eberhardt v. Waters</u>, 901 F.2d 1578, 1580 (11th Cir. 1990). A <u>pro se</u> plaintiff's complaint, however, if verified under 28 U.S.C. § 1746, is equivalent to an affidavit, and thus may be viewed as evidence. <u>See</u> <u>Murrell v. Bennett</u>, 615 F.2d 306, 310 n.5 (5th Cir. 1980). Nevertheless, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge." Fed. R. Civ. P. 56(c)(4). "[A]ffidavits based, in part, upon information and belief, rather than personal knowledge, are insufficient to withstand a motion for summary judgment." <u>Ellis v. England</u>, 432 F.3d 1321, 1327 (11th Cir. 2005).
>
> As we've emphasized, "[w]hen the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[T]he mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91

> L.Ed.2d 202 (1986).  Unsupported, conclusory
> allegations that a plaintiff suffered a
> constitutionally cognizant injury are
> insufficient to withstand a motion for summary
> judgment.  See Bennett v. Parker, 898 F.2d
> 1530, 1532-34 (11th Cir. 1990) (discounting
> inmate's claim as a conclusory allegation of
> serious injury that was unsupported by any
> physical evidence, medical records, or the
> corroborating testimony of witnesses).
> Moreover, "[w]hen opposing parties tell two
> different stories, one of which is blatantly
> contradicted by the record, so that no
> reasonable jury could believe it, a court
> should not adopt that version of the facts for
> purposes of ruling on a motion for summary
> judgment."  Scott v. Harris, 550 U.S. 372,
> 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

Howard v. Memnon, 572 F. App'x 692, 694-95 (11th Cir. 2014) (per

curiam) (footnote omitted).  In an action involving the alleged

violation of a plaintiff's federal constitutional rights under 42

U.S.C. § 1983, "assuming all facts in the light most favorable to

[plaintiff, as the non-moving party]," summary judgment is properly

entered in favor of a defendant where "no genuine issue of material

fact exist[s] as to whether [plaintiff]'s constitutional rights

were violated." McKinney v. Sheriff, 520 F. App'x 903, 905 (11th

Cir. 2013) (per curiam).

## IV. Defendants' Motion

Defendants move for the dismissal of Plaintiff's Second

Amended Complaint based upon failure to state a claim and qualified

immunity.  Defendants' Motion at 1.[4]  They contend that they are

---

[4] The Court will refer to the exhibits appended to Defendants'
Motion as "Ex."

entitled to summary judgment because: (1) they were not responsible for Plaintiff's person or cell being searched, (2) they were not responsible for Plaintiff's placement in administrative confinement, and (3) they were not responsible for Plaintiff receiving psychological testing. Id. at 1-2. They address Plaintiff's claim of retaliation and submit that Plaintiff cannot establish a causal connection between a protected activity, the grievance process, and the actions of the Defendants. Id. at 10-14. They also claim qualified immunity. Id. at 14-15. Alternatively, Defendants assert that Plaintiff failed to exhaust his administrative remedies and his Second Amended Complaint is due to be dismissed pursuant to 42 U.S.C. § 1997e(a). Id. at 6-10. Exhibits are appended to Defendants' Motion, including the Declarations of the Defendants; some relevant grievance procedures; excerpts from Plaintiff's deposition; the grievance appeal log and related declaration; grievance logs; and documents concerning Plaintiff's placement in administrative confinement and his transfer to TCI.

The Declaration of Defendant Crews, the Secretary to the Assistant Warden at PCI, states that she collects grievances and routes them to the appropriate parties for response. Ex. A. She attests that it is not her duty to investigate grievances or to deny the requested relief. Id. Finally, she states that she did

not threaten Plaintiff or retaliate against him for filing grievances, and she is not aware of anyone else doing so.  Id.

The Declaration of Defendant Hale, the property room sergeant, states that she was responsible for inmate property.  Ex. B.  She states that she was not responsible for requesting cell searches, and she did not send anyone to Plaintiff's cell to have it searched.  Id.  She attests that she never coerced Plaintiff into not filing grievances.  Id.  Also, she relates that she never threatened Plaintiff regarding the filing of grievances, and she is not aware of anyone else doing so.  Id.

The Declaration of Defendant Hill, the Assistant Warden, states that she did not threaten Plaintiff or retaliate against him for filing grievances.  Ex. C.  She is also not aware of anyone else doing so.  Id.  She further attests that she was not responsible for Plaintiff's cell being searched.  Id.  She also states that she did not threaten to place Plaintiff in solitary confinement for filing grievances.  Id.  Further, she states that all of his grievances were denied in accordance with department policies and the resulting investigation.  Id.

The Declaration of Defendant Lieutenant Pendleton states that he did not threaten Plaintiff or retaliate against him.  Ex. D.  He is also not aware of anyone else doing so.  Id.  He attests that Plaintiff's cell was never searched because he had filed grievances.  Id.  In addition, Pendleton states that he never

threatened to place Plaintiff in confinement for filing grievances.
Id.

The excerpt from Plaintiff's deposition reveals the following.
Plaintiff filed grievances at GCI about his property and he filed
grievances at PCI about the seizure of his property at GCI.  Ex. F
at 6.  One day, a captain (a non-defendant), called Plaintiff into
his office and said he had complaints that Plaintiff was a writ
writer, and he was going to lock Plaintiff up.  Id.  The captain
placed Plaintiff in administrative confinement, not disciplinary
confinement.  Id.  Staff told Plaintiff to "just chill out" and
"everything would be fine."  Id.  In response, Plaintiff went on a
hunger strike.  Id.

Plaintiff further stated that he had filed grievances against
Defendants Hale and Crews.  Id. at 7.  He remained in confinement
for five days and was then transferred to "SOS" TCI.[5]  Id.  He said
that he was placed there because he was not eating.  Id. at 8.

Plaintiff explained that Defendant Crews received his
grievance as the grievance coordinator.  Id. at 9.  Crews contacted
Defendant Hale as the property room sergeant.  Id.  They met with
Plaintiff and told him he had contraband property and he could be
given a disciplinary report for that infraction, so he should not
push the grievances.  Id. at 9-10.

---

[5] Plaintiff describes the SOS cell as a "psych cell."  Ex. F
at 11.

Plaintiff testified that he "felt that," after he wrote a grievance against Defendant Hale, she sent subordinates to Plaintiff's cell to go through his locker and to harass him. Id. at 10. The individuals who conducted the search worked in the property room, so Plaintiff "felt that she [Hale] sent those individuals[.]" Id.

Plaintiff also stated that Defendant Hill called Plaintiff into the lieutenant's office, and Lieutenant Pendleton and Hill were in the office together. Id. Hill told Plaintiff that his property had arrived and she showed him four or five grievances that Plaintiff had written, and she told him she was in the process of responding to them, and Plaintiff needed to stop writing grievances. Id. Defendant Pendleton told Plaintiff to drop his complaint about the shake-down of Plaintiff's cell. Id. at 11.

Plaintiff explained that he was sent to TCI because he was on a hunger strike, and there is a "psych unit" at TCI, with a special unit for inmates on hunger strikes. Id. A team of psychiatrists at TCI evaluated Plaintiff. Id. at 11-12. They told Plaintiff he was harming himself because he had become dehydrated. Id. at 12. Plaintiff referred to the questions they asked as a psychological test or examination. Id.

When asked about his retaliation claim against Crews and Hale, Plaintiff said the following about Crews: "Well I'm assuming -- because I don't know for sure -- that she sent those other officers

to harass me, cell search –– you know." Id. at 16.  He said that the actions taken against him at PCI were being harassed and placed in confinement without a disciplinary report.[6]  Id. at 18.

Plaintiff attested he had to take psychological tests at TCI related to his hunger strike.  Id.  He stated that he was asked a series of questions during the course of one meeting with four individuals.  Id.

## V.  Plaintiff's Response

In his Response, Plaintiff asserts that both Crews and Hale threatened Plaintiff to encourage him to drop his grievances. Response at 4.  Plaintiff claims Hale sent her subordinates to harass him with a pretextual locker and cell search, and she threatened to retaliate against him if he continued to file grievances.  Id. at 4-5.  Plaintiff also claims that Defendants Hill and Pendleton threatened to place Plaintiff in confinement for filing grievances.  Id. at 5-6.  Plaintiff claims that Defendant Hill gave the direct order to have Plaintiff placed in confinement. Id. at 6.

In response to Defendants' claim of qualified immunity, Plaintiff asserts that the Court can infer that Defendant Crews initiated the investigation of the grievance because she was in close proximity.  Id. at 8.  Plaintiff also notes that after the

---

[6] The Court notes that Plaintiff alleges he was placed in administrative confinement, not disciplinary confinement.

"pretextual search" of his cell and locker, he was called into the property room by Defendant Hale to sign a corrective consultation and a confiscated property form.  <u>Id</u>. at 9.  Plaintiff also contends that it can be "inferred" that Hale helped investigate the grievance, that she sent her subordinates to perform a pretextual search, and that she was "indirectly" involved in the above as evidenced by her sarcastic smile.

Plaintiff contends that it can be inferred that Defendant Hill retaliated against him and ordered him to be placed in solitary confinement for embarrassing her by his writing grievances after Plaintiff told her he would stop.  <u>Id</u>. at 11.  Plaintiff also claims that it can be inferred that Hill intended to punish Plaintiff by placing him in solitary confinement so he would miss the Super Bowl.  <u>Id</u>.  Plaintiff states that as an assistant warden, Hill would be in "close proximity" to chill Plaintiff's protected activity.  <u>Id</u>.  Plaintiff also contends that it can be inferred that Hill wanted to protect her subordinates by denying Plaintiff's grievances.  <u>Id</u>. at 12.  Plaintiff also states that it can be inferred that Defendant Pendleton chilled Plaintiff's First Amendment right to file grievances by threatening to place Plaintiff in solitary confinement if he continued to file grievances.  <u>Id</u>.

Attached to his Response, Plaintiff provides supporting documents, including his Opposing Declaration.  Exhibit 4.  The

Court will not take into consideration the unsigned and undated Declarations of Kartina Walker, Exhibit 5, and Eugene King, Exhibit 8.  They do not satisfy the requirements of 28 U.S.C. § 1746.  On the other hand, the Court will take into consideration Plaintiff's Declaration.

Plaintiff attests:

> Shortly after I mailed the formal complaint pertaining to L. Crews and C. Hale to the regional Director, I was retaliated against by pretextual cell and locker search conducted by officers T. Pinkston, B. R. Davis, and Hopkins (all three of whom work in the property room and operate under the direct supervision of defendant C. Hale).

Exhibit 4 at 3.

After being given a corrective consultation and confiscation property form after the search, Plaintiff said that Defendant Hale greeted him with a sarcastic smile.  _Id_.  Plaintiff filed more grievances and was called before Defendants Pendleton and Hill.  _Id_. at 4.  They threatened him with placement in solitary confinement.  _Id_.  A few days later, he was handcuffed and told by Major Gibson that he was being placed in administrative confinement "just because."  _Id_. at 5.  Major Gibson told the officers to lock Plaintiff up and commented that Plaintiff would not be seeing the Super Bowl this weekend.  _Id_.

Plaintiff started his hunger strike.  _Id_.  After several days passed, he was transferred to TCI to a "psych cell."  Several days later, he ceased his hunger strike and was placed in administrative

confinement at TCI.  <u>Id</u>. at 6.  Thereafter, he was transported to
CFRC and placed in general population.  <u>Id</u>.  Finally, he was
transported to HCI and placed in general population.  <u>Id</u>.

### VI. Law and Conclusions

### A.  Exhaustion of Administrative Remedies

Defendants move to dismiss the Second Amended Complaint
pursuant to 42 U.S.C. § 1997e(a) in their post-answer motion for
summary judgment.  Defendants' Motion at 6-10.  Defendants assert
that Plaintiff failed to raise the issues alleged in this lawsuit
in any grievance appeals and did not avail himself of the grievance
process with regard to his claims.  <u>See</u> Defendants' Exhibits E, G,
H, and I (Doc. 88).

The Court recognizes that exhaustion of available
administrative remedies is required before a 42 U.S.C. § 1983
action with respect to prison conditions by a prisoner may be
initiated in this Court.  In this regard, the Eleventh Circuit has
set forth guidelines for reviewing a prisoner's civil rights
claims:

> Before a prisoner may bring a
> prison-conditions suit under § 1983, the
> Prison Litigation Reform Act of 1995 requires
> that he exhaust all available administrative
> remedies. 42 U.S.C. § 1997e(a); <u>see also</u> <u>Booth</u>
> <u>v. Churner</u>, 532 U.S. 731, 736, 121 S.Ct. 1819,
> 1822, 149 L.Ed.2d 958 (2001). The purpose of
> the PLRA's exhaustion requirement is to
> "afford corrections officials time and
> opportunity to address complaints internally
> before allowing the initiation of a federal
> case." <u>Woodford v. Ngo</u>, 548 U.S. 81, 93, 126

14

> S.Ct. 2378, 2387, 165 L.Ed.2d 368 (2006)
> (quotation omitted). To properly exhaust, a
> prisoner must "[c]ompl[y] with prison
> grievance procedures." <u>Jones v. Bock</u>, 549 U.S.
> 199, 218, 127 S.Ct. 910, 922–23, 166 L.Ed.2d
> 798 (2007).

<u>Whatley v. Warden, Ware State Prison</u>, 802 F.3d 1205, 1208 (11th Cir. 2015).

In addressing the exhaustion requirement, there is a two-step process for resolving motions relying on assertions of failure to exhaust administrative remedies:

> After a prisoner has exhausted the
> grievance procedures, he may file suit under §
> 1983. In response to a prisoner suit,
> defendants may bring a motion to dismiss and
> raise as a defense the prisoner's failure to
> exhaust these administrative remedies. <u>See</u>
> <u>Turner</u>,[7] 541 F.3d at 1081. In <u>Turner v.</u>
> <u>Burnside</u> we established a two-step process for
> resolving motions to dismiss prisoner lawsuits
> for failure to exhaust. 541 F.3d at 1082.
> First, district courts look to the factual
> allegations in the motion to dismiss and those
> in the prisoner's response and accept the
> prisoner's view of the facts as true. The
> court should dismiss if the facts as stated by
> the prisoner show a failure to exhaust. <u>Id</u>.
> Second, if dismissal is not warranted on the
> prisoner's view of the facts, the court makes
> specific findings to resolve disputes of fact,
> and should dismiss if, based on those
> findings, defendants have shown a failure to
> exhaust. <u>Id</u>. at 1082–83; <u>see also id</u>. at 1082
> (explaining that defendants bear the burden of
> showing a failure to exhaust).

<u>Whatley</u>, 802 F.3d at 1209.

---

[7] <u>Turner v. Burnside</u>, 541 F.3d 1077 (11th Cir. 2008).

The Court notes that exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the Prison Litigation Reform Act. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir.), cert. denied, 555 U.S. 1074 (2008); Jones v. Bock, 549 U.S. 199, 211 (2007); Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.") (citation omitted). The Supreme Court has stated that "failure to exhaust is an affirmative defense under the PLRA[.]" Jones v. Bock, 549 U.S. at 216. However, "the PLRA exhaustion requirement is not jurisdictional[.]" Woodford v. Ngo, 548 U.S. at 101. See Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008) (recognizing that the defense "is not a jurisdictional matter").

Indeed, if a prisoner does not completely exhaust his remedies prior to initiating a suit in federal court, the civil rights complaint must be dismissed. This is true even if the inmate thereafter exhausts his administrative remedies after initiating his action in federal court. See Oriakhi v. United States, 165 F. App'x 991, 993 (3d Cir. 2006) (per curiam); Johnson v. Jones, 340 F.3d 624, 627 (8th Cir. 2003); McKinney v. Carey, 311 F.3d 1198, 1200-01 (9th Cir. 2002) (per curiam); Medina-Claudio v. Rodiquez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002); Jackson v. Dist. of Columbia, 254 F.3d 262, 269 (D.C. Cir. 2001); Freeman v. Francis,

196 F.3d 641, 645 (6th Cir. 1999); <u>Perez v. Wisconsin Dep't of Corr.</u>, 182 F.3d 532, 538 (7th Cir. 1999).

Not only is there an exhaustion requirement, "the PLRA exhaustion requirement requires proper exhaustion." <u>Woodford</u>, 548 U.S at 93.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. **Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)**." <u>Pozo</u>,[8] 286 F.3d, at 1024. . . .

<u>Id</u>. at 90 (emphasis added). In fact, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." <u>Id</u>.

Of import, Defendants did not raise the matter of exhaustion in a motion to dismiss prior to filing their answers to the Second Amended Complaint. Instead, they filed their answers, Docs. 54, 60, and 69, and then they filed a motion for summary judgment raising exhaustion, a matter in abatement. Although exhaustion is ordinarily raised in a pre-answer motion to dismiss, <u>Bryant</u>, 530 F.3d at 1375, <u>Logan v. Chestnut</u>, No. 3:08-cv-993-J-12JRK, 2010 WL

---

[8] <u>Pozo v. McCaughtry</u>, 286 F.3d 1022 (7th Cir.), <u>cert</u>. <u>denied</u>, 537 U.S. 949 (2002).

17

3385026, at *2 (M.D. Fla. Aug. 26, 2010), in this instance, Defendants raised the affirmative defense of failure to exhaust administrative remedies in their Answers.  See Williams v. Nish, No. 1:11-CV-0396, 2015 WL 106387, at *4 (M.D. Penn. Jan. 7, 2015) (addressing the question of whether there has been a timely assertion of the affirmative defense of failure to exhaust), aff'd, 612 F. App'x 81 (3rd Cir. 2015).  The Court finds in these limited circumstances where Plaintiff had notice of the defense sufficient to avoid prejudice, the post-answer exhaustion defense was not waived.

The Court will proceed to the question of exhaustion.  The issue that needed to be exhausted by Plaintiff prior to filing his civil rights complaint is whether he was disciplined (by having his person and locker searched, by being placed in solitary confinement, and by being subjected to unnecessary psychological testing) in retaliation for filing grievances.

In the first step of the exhaustion analysis, the Court recognizes that Plaintiff is not required to plead exhaustion; therefore, the Second Amended Complaint is not subject to dismissed on its face.  In this case, there are disputed issues of fact as to whether Plaintiff exhausted his administrative remedies.  See Response at 13-19.  Thus, the Court will make findings on the disputed issues of fact to decide whether administrative remedies

were available to Plaintiff, and if so, whether he properly exhausted his administrative remedies.[9]

The Florida Department of Corrections (FDOC) provides an internal grievance procedure. See Chapter 33-103, Florida Administrative Code (F.A.C.). Thus, to determine whether Plaintiff exhausted his administrative remedies, this Court must examine the relevant documents to determine whether the incidents in question were grieved. If these incidents were grieved and the documents complied with the deadlines and other procedural rules as set forth in the F.A.C., the issues raised therein are exhausted.

Generally, the FDOC provides a three-step grievance procedure. First, an inmate must submit an informal grievance. See Chapter 33-103.005(1), F.A.C. If the issue is not resolved, the inmate is directed to file a formal grievance at the institutional level. See Chapter 33-103.006, F.A.C.; Chapter 33-103.011(4), F.A.C. If the matter is not resolved at the institutional level, the inmate is directed to file an appeal to the Office of the Secretary of the FDOC. See Chapter 33-103.007, F.A.C.; Chapter 33-103.011, F.A.C.

---

[9] The parties have not requested an evidentiary hearing on this issue. They have submitted evidence for the Court's consideration; therefore, the Court proceeds to resolve the material questions of fact based on the documents before the Court. Bryant, 530 F.3d 1377 n.16 (recognizing that a district court may resolve material questions of fact on the submitted papers when addressing the Prison Litigation Reform Act's exhaustion of remedies requirement).

As noted by Defendants, in certain instances, an inmate may depart from the standard grievance procedure and file a direct grievance with the Secretary of the FDOC.  Grievances of reprisal are one of the types of grievances that may be filed with the Secretary.  Chapter 33-103.007(6), F.A.C.  In a grievance of reprisal, "[t]he inmate must clearly state the reason for not initially bringing the complaint to the attention of institutional staff and by-passing the informal and formal grievance steps of the institution or facility[.]"  Chapter 33-103.007(6)(a)(2), F.A.C. If the Secretary determines that the grievance does not qualify as a grievance of reprisal, the grievance must be returned to the inmate with reasons for return specified and advising the inmate to resubmit the grievance at the appropriate level.  Chapter 33-103.007(6)(d), F.A.C.  Finally, if the grievance is returned to the institution or facility for further investigation or a response, the inmate may, after receiving the response, re-file with the Secretary.  Chapter 33-103.007(7), F.A.C.

Defendants rely on the Central Office grievance log that covers the dates and locations of Plaintiff's grievance appeals that were received and adjudicated.  Ex. G.  Defendants note that there are ten grievance appeals filed by Plaintiff after November 1, 2009, when Plaintiff arrived at PCI, and before September 20, 2010, when he filed his original complaint.  Defendants' Motion at 8.  None of these grievances include a complaint that Plaintiff's

20

person or cell was searched in retaliation for his filing grievances, that he was placed in confinement in retaliation for filing grievances, and or that he received psychological testing in retaliation for filing grievances.  See Ex. G.

In his Response to Defendants' Motion, Plaintiff counters that he filed a grievance of a sensitive nature pursuant to Chapter 33.-103.006(3)(a), (c), and (d), F.A.C., against Defendants Hale and Crews, and in accordance with the response he received, he exhausted the procedure.  Response at 15; Plaintiff's Exhibits B, H, and I.  Upon review of the referenced grievances, these grievances concern the seizure of Plaintiff's personal property at GCI and Plaintiff's complaints about the Defendants' failure to grant his requested relief and Plaintiff's assertion that Crews, Sgt. Wheeler (at GCI), and Hale conspired against Plaintiff by refusing to return his property as a form of reprisal for Plaintiff's participation in the grievances process.  Upon a thorough review, these referenced grievances do no concern any complaints about officers retaliating against him by disciplining Plaintiff through a cell search at PCI, placing him in confinement at PCI, or subjecting him to psychological testing, the heart of the case at this juncture.  Instead, these complaints relate to the seizure and destruction of Plaintiff's property at GCI.

Plaintiff further states that he filed a grievance of reprisal against Defendant Hale with respect to a retaliatory and pretextual locker and cell search on December 19, 2009.  Response at 15; Plaintiff's Exhibit E at 2.  The response states that the grievance is not accepted as a grievance of a sensitive nature, and Plaintiff is granted an additional fifteen days to resubmit his grievance at the institutional level.  Id. at 3.  Plaintiff does not assert and the record does not demonstrate that he complied with this directive and submitted a grievance at the institutional level concerning the alleged retaliatory disciplinary action of Defendant Hale.

Plaintiff does contend, however, that he satisfied the exhaustion requirement because he met the requirement by filing the grievance of reprisal, relying on Dimanche v. Brown, 783 F.3d 1204, 1212-14 (11th Cir. 2015) (finding the grievance of reprisal to be a proper direct grievance).  Response at 16.  The record shows that Plaintiff filed his grievance of reprisal on the proper DC1-303 form.  Exhibit E at 2.  He stated at the top of the form that it was a grievance of reprisal.  Id.  He then stated his reason for not bringing his complaint to the attention of institutional staff. Id.  See Myers v. Watkins, No. 5:12cv259-MW/EMT, 2015 WL 4756250, at *8 (N.D. Fla. Aug. 11, 2015) (finding the direct grievance improper as it was on an improper form and it failed to clearly provide the reasons for bypassing the standard institutional

process).   Thus, this Court concludes Plaintiff's grievance of reprisal satisfies the exhaustion requirement with respect to the claim that Defendant Hale disciplined Plaintiff by ordering a locker search in retaliation for Plaintiff's filing of grievances.[10]

Finally, Plaintiff references a grievance of reprisal dated December 11, 2009 against Sgt. Wheeler of GCI for confiscating his property.  Response at 15-16; Plaintiff's Exhibit 6.  It is on the proper form and explains why Plaintiff by-passed the institutional level (because he feared Secretary Specialist Crews may interfere with the reception of the grievance), but it does not concern the disciplinary and retaliatory actions of a locker/cell search conducted on December 18, 2009, Plaintiff's February 5, 2010 placement in confinement, or his being subjected to psychological testing.  Exhibit 6.  Also, the content of the grievance is a complaint about the actions of Sgt. Wheeler at GCI, a non-defendant, and the relief sought in the grievance is sanctions against Sgt. Wheeler.  Id.

Given these facts, the Court concludes that the December 19, 2009 grievance of reprisal against Defendant Hale did exhaust

---

[10] The Court finds that the grievance of reprisal dated January 12, 2010, did not properly exhaust administrative remedies because it did not comply with the requirements of the inmate grievance procedure.  See Exhibit 3.  Plaintiff failed to clearly state therein the reason for not initially bringing his complaint of retaliation and reprisal to the attention of institutional staff. As such, it failed to comply with the inmate grievance procedure.

Plaintiff's claim that he was disciplined by Defendant Hale by having his locker searched in retaliation for filing grievances. See Exhibit E at 2.  The record also demonstrates, however, that Plaintiff failed to exhaust his remaining claims about being disciplined in retaliation for filing grievances.  Based on all reasonable inferences, Plaintiff had access to the grievance process and repeatedly used the process.  Plaintiff was obviously aware of the grievance process, including how to properly prepare and submit a grievance of reprisal, avoiding the requirement of filing a grievance at the institutional level.

Upon review, the Court finds that the administrative process was available to Plaintiff.  Of import, not only was it available, Plaintiff used the grievance process to exhaust his claim against Defendant Hale.  However, Plaintiff has not shown that he properly filed grievances and fully exhausted his administrative remedies in compliance with the procedural rules against the remaining Defendants with regard to his claim about being disciplined in retaliation for filing grievances by being placed in confinement and by being subjected to a psychological test.

In light of the above, Plaintiff failed to exhaust his administrative remedies before filing a lawsuit to seek judicial redress against Defendants Hill, Crews, and Pendleton.  The only claim that has been properly exhausted is Plaintiff's claim against Defendant Hale for disciplining Plaintiff for filing grievances by

directing officers to search Plaintiff's locker.  <u>See</u> Plaintiff's Exhibit E.  Therefore, the Court concludes that Defendants' Motion should be granted for Plaintiff's failure to exhaust his administrative remedies, except with respect to Plaintiff's claim against Defendant Hale for allegedly disciplining Plaintiff for filing grievances by directing officers to search Plaintiff's locker.  As such, Defendants Hill, Crews, and Pendleton are due to be dismissed from this action.

## B.  Retaliation

With respect to a claim of a First Amendment violation in a prison setting, the rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance or a lawsuit concerning the conditions of his imprisonment.  <u>Moulds v. Bullard</u>, 345 F. App'x 387, 393 (11th Cir. 2009) (per curiam) (citation omitted); <u>Douglas v. Yates</u>, 535 F.3d 1316, 1321 (11th Cir. 2008); <u>see</u> <u>also</u> <u>Bennett v. Hendrix</u>, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005) (adopting the standard that "[a] plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights"), <u>cert</u>. <u>denied</u>, 549 U.S. 809 (2006).  Simply put, prison officials may not retaliate against inmates for filing lawsuits or administrative grievances.  <u>Wright v. Newsome</u>, 795 F.2d 964, 968 (11th Cir. 1986) (per curiam).

"The core of [a retaliation claim brought pursuant to 42 U.S.C. § 1983] is that the prisoner is being retaliated against for exercising his right to free speech." O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011) (per curiam) (citation omitted), cert. denied, 133 S.Ct. 445 (2012).  Also of import, three elements are involved in a retaliation claim:

> [T]he inmate must establish that: "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action [the disciplinary punishment] and the protected speech [the grievance]."

Id. (first alteration added, remainder in original)(footnote omitted) (quoting Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008)).

In order to establish the third prong, a plaintiff is required to do more than make "general attacks" upon a defendant's motivations and must articulate "affirmative evidence" of retaliation to prove the requisite motive. Crawford-El v. Britton, 523 U.S. 574, 600 (1998) (citations omitted).  "In other words, the prisoner must show that, as a subjective matter, a motivation for the defendant's adverse action was the prisoner's grievance or lawsuit." Jemison v. Wise, 386 F. App'x 961, 965 (11th Cir. 2010) (per curiam) (citation omitted) (finding the district court erred by dismissing a complaint alleging retaliation with prejudice,

"regardless of whether the retaliation claim ultimately [would] ha[ve] merit").

To establish subjective intent, a prisoner must provide more than conclusory assertions, possibly through a chronology of events that can be used to infer retaliatory intent. Williams v. Brown, 347 F. App'x 429, 435 (11th Cir. 2009) (per curiam) (finding conclusory allegations insufficient but officer's temporal reaction to a grievance and circumstantial evidence sufficient to state a claim). However, because jailers actions are presumed reasonable, an inmate must produce evidence to support "specific, nonconclusory factual allegations that establish improper motive causing cognizable injury." Crawford-El, 523 U.S. at 598.

Finally, where a plaintiff makes a prima facie showing that constitutionally protected conduct was a substantial or motivating factor in a defendant's decision to take an adverse action against the plaintiff, summary judgment in favor of the defendant is still appropriate if the defendant can demonstrate that he would have taken the same action even without such impetus. Mt. Healthy City Bd. of Ed. v. Doyle, 429 U.S. 274, 287 (1977); Crawford-El, 523 U.S. at 593; Mosley, 532 F.3d at 1278.

Defendants address the retaliation claim in their Motion. Defendants' Motion at 10-14. Apparently, Defendant Hale does not dispute that Plaintiff's administrative grievances constitute protected action, leaving only the second and third elements,

whether Hale's actions would likely deter a person of ordinary firmness from engaging in such speech and whether there is a causal relationship between the retaliatory action [the search] and the protected speech [the grievance].  The Court finds that the second prong has been met because pretextual cell/locker searches would likely deter a person of ordinary firmness from filing grievances. O'Bryant, 637 F.3d at 1209.

With regard to the third prong, Plaintiff must present affirmative "evidence of retaliatory animus" on the part of Defendant Hale.  Id. at 1219.  Defendant Hale, the property room sergeant at PCI, states the following in her Declaration:

> As property room sergeant I was responsible for inmate property.  As the property sergeant I was not responsible for requesting the search of inmate cells.  Nor did I send anyone to inmate Jackson's cell to have it searched.

Ex. B (enumeration omitted).

Defendant Hale has met her initial burden of showing this Court, by reference to her sworn Declaration, that there are no genuine issues of material fact that should be decided at trial with respect to this claim.  She has testified that she is not responsible for cell searches as a property room sergeant, and she did not send anyone to search Plaintiff cell to conduct a search. She has further explained that her responsibility is over inmate property as the property room sergeant, not cell searches.

In his Response, Plaintiff states that "it can be inferred that [Hale] did, in fact, send her subordinates to perform a pretextual search (Her sarcastic smile could be 'inferred' she was involved indirectly[.]" Response at 9.  Plaintiff, in his Opposing Declaration, describes the incident as follows:

> Shortly after I mailed the formal complaint pertaining to L. Crews and C. Hale to the regional Director,[11] I was retaliated against by pretextual cell and locker search conducted by T. Pinkston, B. R. Davis, and Hopkins (all three of whom work in the property room and operate under the direct supervision of defendant C. Hale).  It was at that time that I had additional personal property confiscated.  I also received a corrective consultation for possessing the alleged contraband property.  (Exhibit[s] D, E, and No. 3).

Plaintiff's Exhibit 4 at 3.

When asked during his deposition how Hale retaliated against him, Plaintiff said: "[w]ell I'm assuming -- because I don't know for sure -- that she sent those other officers to harass me, cell search -- you know."  Ex. F at 16.  Plaintiff explained that his assumption that Defendant Hale was involved in directing the search of his locker was based on the following:

> A.   She sent subordinates to my -- they shook me down -- you know, go through your locker and -- you know, harass me.

---

[11] This "formal complaint" would be outside the administrative remedies recognized by the FDOC and set forth in the F.A.C.; therefore, it had no impact on exhaustion and would not be addressed in an administrative response.

> Q.   She sent them?
>
> A.   Yes.  I can't say what -- they worked for her.
>
> Q.   They worked for her?
>
> A.   Yes.  Ms. Pickett, they work in the property room.  She's over the property room. So, **I felt that she sent those individuals,** but I never wrote any grievances about that.

Ex. F at 10.

Plaintiff must go beyond the pleadings and by his own affidavits, depositions, answers to interrogatories, or admissions on file, designate specific facts showing that there is a genuine issue for trial.   Here, Plaintiff has not provided evidence to refute Defendant Hale's claim that she is not responsible for ordering cell searches and she did not send anyone to search Plaintiff's cell.   Indeed, Plaintiff has produced nothing, beyond his own conclusory allegations, to support his claim that Hale, motivated by retaliatory animus, ordered officers to search Plaintiff's cell.

Again, Plaintiff merely surmises that Defendant Hale was in some way responsible for the fact that Plaintiff's locker was searched.   Although Plaintiff may believe that Hale directed officers to conduct a cell search, an affidavit, sworn complaint or deposition based on belief is not sufficient to defeat summary judgment by creating a genuine issue of fact about the existence of that certain fact.

The Eleventh Circuit, in <u>Pace v. Capobianco</u>, 283 F.3d 1275, 1278-79 (11th Cir. 2002) (footnote omitted), outlined what constitutes statements that are sufficient to create a fact issue:

> The Rules are clear: "Supporting and opposing affidavits *shall* be made on personal knowledge." Fed.R.Civ.P. 56(e) (emphasis added). Rule 56(e)'s personal knowledge requirement prevents statements in affidavits that are based, in part, "upon information and belief" --instead of only knowledge-- from raising genuine issues of fact sufficient to defeat summary judgment. <u>See</u> <u>Stewart v. Booker T. Washington Ins.</u>, 232 F.3d 844, 851 (11th Cir. 2000) ("upon information and belief" insufficient); <u>Fowler v. Southern Bell Tel. and Tel. Co.</u>, 343 F.2d 150, 154 (5th Cir. 1965) ("knowledge, information and belief" insufficient); <u>Robbins v. Gould</u>, 278 F.2d 116, 118 (5th Cir. 1960) ("knowledge and belief" insufficient). Likewise, an affidavit stating only that the affiant "believes" a certain fact exists is insufficient to defeat summary judgment by creating a genuine issue of fact about the existence of that certain fact. <u>Jameson v. Jameson</u>, 176 F.2d 58, 60 (D.C. Cir. 1949) ("Belief, no matter how sincere, is not equivalent to knowledge."); <u>see</u> <u>also</u> <u>Tavery v. United States</u>, 32 F.3d 1423, 1426 n.4 (10th Cir. 1994); <u>Hansen v. Prentice-Hall, Inc.</u>, 788 F.2d 892, 894 (2d Cir. 1986). Even if the affidavit is otherwise based upon personal knowledge (that is, includes a blanket statement within the first few paragraphs to the effect that the affiant has "personal knowledge of the facts set forth in th[e] affidavit"), a statement that the affiant believes something is not in accordance with the Rule. <u>See</u> <u>Certmetek, Inc. v. Butler Avpak, Inc.</u>, 573 F.2d 1370, 1377 (9th Cir. 1978) (equating "I understand" statement in affidavit to inadmissible "I believe" statements and concluding that statement is inadmissible despite general averment to personal knowledge at beginning of affidavit).

Plaintiff surmises, believes, and suspects that Hale, with retaliatory animus, directed the search of Plaintiff's cell and locker.  This does not equate with knowledge.  Pursuant to Rule 56(e), the statement must be made "on personal knowledge" in order to raise a genuine issue of fact sufficient to defeat Defendant Hale's motion for summary judgment.  Here, Plaintiff has no personal knowledge as to whether Hale directed a search of Plaintiff's cell in retaliation for Plaintiff's filing grievances. He simply surmises that it had to be so because a search was conducted by officers and some of Plaintiff's property was seized as suspected contraband.

In sum, "insufficient competent evidence exists to support Plaintiff's version of the facts" regarding the claim that Defendant Hale directed the officers to conduct a cell search in retaliation for Plaintiff filing grievances.  <u>Pace</u>, 283 F.3d at 1278.  There is no real basis in the record for this factual issue to be considered genuine.

Plaintiff has failed to allege specific facts or provide any documents demonstrating that, as a subjective matter, a motivation for directing the cell search was Plaintiff's filing grievances and that Defendant Hale actually directed the officers to conduct the search of Plaintiff's cell or even had the authority to do so since she was in charge of the property room.  Accordingly, Defendant Hale's Motion is due to be granted.

The Court will make an alternative ruling with regard to Defendants Hill, Crews and Pendleton.  With regard to the unexhausted claims against them, Plaintiff has failed to show any causal connection between the named Defendants and the claim he was disciplined in retaliation for filing grievances.  In fact, in his deposition, Plaintiff clearly states that a captain, a non-defendant, placed him in administrative confinement for being a writ writer, not by direction of one of the Defendants.  Ex. F at 6.  Furthermore, the alleged retaliatory psychological testing occurred at TCI, not PCI.  Ex. F at 11-12.  In his deposition, Plaintiff testified that TCI psychiatrists asked him questions because Plaintiff was on a hunger strike, and they deemed it necessary to evaluate Plaintiff because they feared he was harming himself as he had become dehydrated.  Id. at 12.  Thus, Plaintiff has failed to show a causal connection between the Defendants in this action and the decision to conduct psychological testing or an examination of Plaintiff at TCI due to Plaintiff's prolonged hunger strike.

As a result, the Court finds that the Defendants are entitled to summary judgment.  Accordingly, Defendants' Motion is due to be granted.

## C.  Qualified Immunity

In the alternative, Defendants contend that they are entitled to qualified immunity because Plaintiff has failed to demonstrate a First Amendment violation.  Defendants' Motion at 14-15.

The Eleventh Circuit discussed the requirements for a public official to receive qualified immunity:

> To receive qualified immunity, [a] public official must establish that he was engaged in a "discretionary function" at the time he committed the allegedly unlawful act. Holloman ex. rel. Holloman v. Harland, 370 F.3d 1252, 1263-64 (11th Cir. 2004) . . . . If the official demonstrates that he was engaged in a discretionary function, the burden shifts to the plaintiff to prove that the official is not entitled to qualified immunity. Cottone v. Jenne, 326 F.3d 1352, 1358 (11th Cir. 2003). This requires plaintiff to satisfy the two-part test prescribed by the Supreme Court in Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Under Saucier, a plaintiff must first show that the defendant violated a constitutional right and then demonstrate that the constitutional right was clearly established at the time of the alleged wrongful act.  533 U.S. at 201, 121 S.Ct. at 2156.  If a court, after viewing all the evidence in the light most favorable to the plaintiff and drawing all inferences in his favor, determines that the plaintiff has satisfied these two requirements, the defendant may not obtain qualified immunity. Holloman, 370 F.3d at 1264.

Bryant v. Jones, 575 F.3d 1281, 1295 (11th Cir. 2009), cert. denied, 559 U.S. 940 (2010).  Following the United States Supreme Court's decision in Pearson v. Callahan, 555 U.S. 223, 236 (2009), this Court is "free to consider these elements in either sequence

and to decide the case on the basis of either element that is not demonstrated." Youmans v. Gagnon, 626 F.3d 557, 562 (11th Cir. 2010) (per curiam).

It is undisputed that Defendants were engaged in discretionary functions during the events in question.  The Defendants did not violate Plaintiff's constitutional rights and are therefore entitled to qualified immunity.

### VII.   Summary Judgment

Based on all of the above, the Defendants are entitled to summary judgment, and judgment shall be entered for the Defendants and against the Plaintiff.

Therefore, it is now

**ORDERED:**

1.   Defendants' Motion for Summary Judgment (Doc. 88) is **GRANTED**, and the **Clerk** shall enter judgment for Defendants Lynn Hill, L. Crews, Lieutenant Pendleton, and Sgt. Hale.

2.   The **Clerk** shall enter judgment accordingly and close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 1st day of June, 2016.

_____
BRIAN J. DAVIS
United States District Judge

sa 5/25
c:
Ira C. Jackson
Counsel of Record